In the Matter of the Transfer Tax upon the Estate of JOHN G. WENDEL, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; REBECCA A. D. W. SWOPE et al., as Administratrices of the Estate of JOHN G. WENDEL, Deceased, et al., Respondents.

Tax — constitutional law — statute (Tax Law [Cons. Laws, ch. 60], § 220, subd. 6), imposing tax upon all transfers of property under and by authority of a power of appointment given by deed or will is valid.

1. The statute (Tax Law, § 220, subd. 6) does not attempt to impose a tax upon property but upon the exercise of a power of appointment, and its constitutionality does not depend upon the particular manner in which the power is exercised.

2. The testator devised certain real property in the following terms. " To my son * * * to have and to hold the said eighteen lots of land for and during his life, the rents, issues and profits I devote expressly to his own use and benefit and I authorize him to appoint the said real estate to and amongst his lawful issue or to his sisters or their issue in such share and for such estates and on such conditions as he may think fit by deed or will." Thereafter the son conveyed the real property described to his sisters by deeds which recited that they were executed and delivered pursuant to the power and authority conferred by the will of the testator, and on the delivery of the deeds all of the property passed out of the possession of the son and into the possession of his sisters. It was found that the deceased made no transfer of the property in contemplation of death or intended to take effect in possession or enjoyment at or after the death of said deceased.

The grantor in the deeds lived thereafter for nearly four years. The Appellate Division unanimously reversed the orders of the surrogate so far as they fixed a tax on the value of such real property and the comptroller appeals to this court. On examination of the provisions of section 220 of the Tax Law, as amended and as it stood at the time of the transfer under consideration (L. 1910, ch. 706), *held*, that it was the intention of the legislature to impose a tax upon all transfers by authority of a power of appointment given by deed or will and that a tax upon a transfer by virtue of such a power of appointment is not so arbitrary as to be without reason or to defeat the judgment of the legislature.

*Matter of Wendel*, 181 App. Div. 126, reversed.

(Argued April 24, 1918; decided May 28, 1918.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 16, 1918, which modified an order of the Westchester County Surrogate's Court assessing a transfer tax upon the estate of John G. Wendel, deceased.

·The appraiser appointed pursuant to the petition therefor in the *Matter of the Transfer Tax upon the Estate of John G. Wendel, Deceased,* omitted from his report of property subject to a transfer tax certain real property described in the will of John D. Wendel, deceased, of which said John G. Wendel had a power of appointment. The appraiser stated in his report that " As the power of appointment was exercised by the decedent by deed and not by will, the transfer of this property, of the value of $1,525,000, cannot be taxed in this proceeding." Orders were entered upon said report fixing the tax. The comptroller appealed to the surrogate from said orders so far as the same failed to include the real property transferred pursuant to said power of appointment. The surrogate remitted the report of the appraiser to him to correct the same by including therein the value of the said real property as of the date of the transfer thereof by John G. Wendel by deed less the value of the life estate of John G. Wendel on that day. The appraiser

made his supplemental report accordingly. The value of said real property at the date of transfer was fixed at $1,525,000 and the life estate of John G. Wendel was computed at $350,149. An order was made fixing the transfer tax on the value of said real property, less the value of said life estate, at $20,955.53. (*Matter of Wendel*, 95 Misc. Rep. 406.) The supplemental report of the appraiser and the order fixing the tax thereon were thereafter duly confirmed by the surrogate. The administrators of the goods, etc., of John G. Wendel, deceased, and his next of kin individually, appealed to the Appellate Division from said orders so far as they included a tax on said real property, and stated in the notice of appeal "That if the Tax Law of the State of New York is to be construed as subjecting the transfers herein specified or any of them to taxation, it is, to that extent, unconstitutional under the Constitution of the State of New York, and under the United States Constitution, in that it denies the appellants and each of them, or their respective predecessors in interest, the equal protection of the laws and deprives them of their property without due process of law."

The Appellate Division unanimously reversed the orders of the surrogate so far as they fixed a tax on the value of said real property. (*Matter of Wendel*, 181 App. Div. 126.) The comptroller appeals to this court from said order of reversal. Other facts, so far as material, are stated in the opinion.

*Francis A. Winslow* for appellant. The sisters of John G. Wendel became seized of the premises by virtue of the deeds executed in the exercise of the power of appointment. (*Matter of Slosson*, 216 N. Y. 79; *Matter of Pell*, 171 N. Y. 48; *Matter of King*, 217 N. Y. 388.) The devolution of the property by the exercise by deed of the power of appointment is taxable. (Cons. Laws,

ch. 60, § 220; *Matter of Keeney*, 194 N. Y. 281.) Sub-
division 6 of section 220 of the Tax Law does not violate
the provisions of the Constitution of the state of New
York or the Constitution of the United States. (*Matter
of Delano*, 176 N. Y. 486; 205 U. S. 466.) A provision
in a statute for the taxation of transfers by deed in the
exercise of the power of appointment, does not violate
any provisions of the Constitution of the state of New
York or the Federal Constitution. (Cooley's Stat. Lim.
[6th ed.] 587; *M'Culloh* v. *Maryland*, 4 Wheat. 416;
*Genet* v. *City of Brooklyn*, 99 N. Y. 296; *People ex rel.
Eisman* v. *Ronner*, 185 N. Y. 285; *Matter of White*,
208 N. Y. 64; *Matter of Keeney*, 194 N. Y. 281; *Matter
of McPherson*, 104. N. Y. 306; *People ex rel. Hatch* v.
*Reardon*, 184 N. Y. 431.) The transfers involved herein
were properly taxed upon the value at the time the
power of appointment was exercised. (*Matter of Vander-
bilt*, 172 N. Y. 69; *Matter of Howe*, 86 App. Div. 286;
176 N. Y. 570; *Matter of Burgess*, 204 N. Y. 265; *Matter
of Smith*, 80 Misc. Rep. 140; *Matter of Field*, 36 Misc.
Rep. 279; *Matter of Green*, 153 N. Y. 223; *Matter of
Zborowski*, 213 N. Y. 109.)

*Lewis L. Delafield, George Flint Warren, Jr.*, and *Alfred
Gregory* for respondents. The tax imposed by the
statute is an inheritance or succession tax, and since
the deeds made by John G. Wendel on January 23,
1911, were present transfers, *inter vivos*, and were not
made in contemplation of death, nor to take effect in
possession or enjoyment upon the death of the grantor,
the title of the grantees was not derived from succession
or inheritance, and the transaction is not within the
statute. (*Matter of Keeney*, 194 N. Y. 281; 222 U. S.
525; *Matter of Stewart*, 131 N. Y. 274; *Matter of Harbeck*,
161 N. Y. 211; *Matter of Pell*, 171 N. Y. 48; *Matter of
Lansing*, 182 N. Y. 238; *Matter of Stewart*, 131 N. Y.

274; *Matter of Vanderbilt*, 50 App. Div. 246; 163 N. Y. 597; *Matter of Dows*, 167 N. Y. 227; *Orr* v. *Gilman*, 183 U. S. 278.) The deeds made by John G. Wendel in 1911 constituted a present transfer. The possession and enjoyment of the grantees were not postponed until his death. (*Matter of Delano*, 176 N. Y. 493.) If, by the true construction of the statute, the transfer here involved is subject to the tax, such statute is, to that extent, unconstitutional. (*People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Matter of City of New York*, 190 N. Y. 350; *Matter of Keeney*, 194 N. Y. 281; *People ex rel. Moskowitz* v. *Jenkins*, 202 N. Y. 53; *People ex rel. Hatch* v. *Reardon*, 184 N. Y. 431; *Matter of Delano*, 176 N. Y. 486.)

CHASE, J. John D. Wendel died in 1876 leaving his son John G. Wendel and six daughters, all of whom were living on January 23, 1911. John D. Wendel left a will which was duly probated. The only part thereof affecting the question now before us is the twenty-first paragraph thereof which is as follows:

"*Twenty-first.* To my son John G. Wendel I devise the Southerly half of the block of ground lying between Broadway and Seventh Avenue and 38th and 39th streets, that is to say, eighteen lots of land known by the Ward Map numbers of the City as * * * To have and to hold the said eighteen lots of land for and during his life, the rents, issues and profits I devote expressly to his own use and benefit and I authorize him to appoint the said real estate to and amongst his lawful issue or to his sisters or their issue in such share and for such Estates and on such conditions as he may think fit by deed or by will, and in case he shall leave no such valid appointment I devise the said lots of land to his lawful issue and if he shall leave no such issue then to his sisters their heirs and assigns in fee simple forever."

On January 23, 1911, said John G. Wendel by six deeds theretofore duly executed by him, transferred the real property described in said paragraph of the will of his father to his sisters. Said conveyances resulted in conveying to them, but in different proportions and interests, the fee of all of said real property. Each of said deeds recited that it was executed and delivered pursuant to the power and authority conferred by the will of John D. Wendel, deceased. On the delivery of said deeds all of said property passed out of the possession of John G. Wendel and into the possession of his said sisters.

It is further found, " That the said deceased made no transfer of any property by deed, grant, bargain, sale or gift in contemplation of death or intended to take effect in possession or enjoyment at or after the death of said deceased." John G. Wendel lived thereafter for nearly four years and died on the 30th of November, 1914.

It is conceded that under subdivision 6 of section 220 of the Tax Law if John G. Wendel had *by his will* executed the power of appointment given to him by the will of his father the transfer made by such appointment and devise would be taxable. The only question involved on this appeal is whether the transfer is taxable under the section of the Tax Law mentioned in view of the fact that John G. Wendel transferred the same together with his life estate therein to his sisters during his lifetime *by deed* and not in contemplation of death.

We must first inquire whether the statutes imposing the tax by their terms include a transfer *by deed* pursuant to a power of appointment.

The first act in this state imposing a tax upon the devolution of property was chapter 483 of the Laws of 1885 entitled " An act to tax gifts, legacies and collateral inheritances in certain cases." It made all property subject to a tax that should pass to certain persons

" By will or by the intestate laws of this state from any person who may die seized or possessed of the same " as in the act provided. It also made subject to a tax all property " Transferred by deed, grant, sale or gift made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor." It was intended that the tax should be on the transfer of property passing upon the death of the grantor or bargainor or by the will of decedent or the intestate laws of the state. That act was several times amended, but the amendments did not extend the tax to a transfer of property other than one that passes upon a death or in contemplation of death.

By chapter 399 of the Laws of 1892 the statutes relating to gifts, legacies and collateral inheritances were repealed, and a new act was passed entitled, " An act in relation to taxable transfers of property." The title of the new act was broader and more comprehensive than that of the one repealed. That act imposed a tax on the transfer of property as therein provided when the same is by will or by the intestate laws of this state, and also upon transfers as therein provided, " made in contemplation of the death of the grantor, vendor or donor, or intended to take effect, in possession or enjoyment, at or after such death." Such act related wholly to transfers arising or taking effect upon a death or in contemplation of death. The act was rewritten in the General Tax Law of 1896 (Chapter 908) and became article 10 of that act. The terms of the act so far as it affects the question under consideration were not materially changed from those of the act of 1892.

In 1897 (Laws of 1897, chapter 284) section 220 of the Tax Law was amended and by such amendment subdivision 5 thereof was added and included the provisions of subdivision 6 of that section as hereinafter quoted. The Tax Law was again rewritten in 1909 and it then

became chapter 62 of the Consolidated Laws. Article 10 thereof relates to taxable transfers. Section 220 of that act was rewritten by an amendment in 1910 (Chapter 706) and as then rewritten it existed at the time of the transfers by deed under consideration. That section provides:

" A tax shall be and is hereby imposed upon the transfer of any tangible property, real or personal * * * or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property, in the following cases: "

Following the part of the section quoted there are seven subdivisions. The first and second refer expressly to transfers " By will or by the intestate laws of this state." The third refers to property transferred by will. The fourth refers to transfers " By deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." The fifth refers to " Any such transfer, whether made before or after the passage of this chapter."

The sixth is as follows:

" Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this chapter, such appointment when made shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will * * *."

The seventh is not now material. It will be observed that the sixth subdivision is not limited to a particular form of transfer. It provides in clear terms that whenever *any person or corporation* shall exercise a power of

appointment derived from *any* disposition of property the appointment shall be deemed a transfer taxable under the provisions of the chapter in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will. The latter part of the subdivision quoted defines generally the intention of the legislature in prescribing in what manner the property shall be taxed. The subdivision by its terms provides for a tax upon *any transfer based upon a power of appointment.* It includes a corporation as a possible grantor under a power as was necessary if every exercise, of power was intended to be included. Certain corporations are given power to act in a trust capacity and the exercise of such power is common.

A corporation does not die or have testamentary capacity in the sense intended in the statute. By the statute a transfer is taxable when made *by deed* in contemplation of death even if intended to take effect at once, and without waiting until the death of the grantor before reducing the property transferred to possession. The section of the statute considers transfers by will and by deed. The language of the sixth subdivision of the statute was not inadvertent, but was written while the different forms of transfers were under consideration. The general language of the sixth subdivision should be construed in accordance with its ordinary meaning. It would seem that the legislature intended that an exercise of the power of appointment as provided by said subdivision 6 should be taxed whether it is made by a person or corporation and whether accomplished by deed or will duly authorized.

The statutes prior to 1897 relate exclusively to transfers by succession or inheritance or made in contemplation of death, but the amendment of that year extended their scope.

The statute does not attempt to impose a tax upon property but upon the exercise of a power of appointment. The act so far as it relates to the power of appointment is constitutional when the power is exercised by will even though the transfer would not be subject to a tax under the act except for the exercise of the power of appointment. (*Matter of Delano*, 176 N. Y. 486; *Chanler* v. *Kelsey*, 205 U. S. 466; *Matter of Vanderbilt*, 50 App. Div. 246; affd., 163 N. Y. 597; *Matter of Brez*, 172 N. Y. 609; *Matter of Dows*, 167 N. Y. 227; *Orr* v. *Gilman*, 183 U. S. 278; *Matter of Keeney*, 194 N. Y. 281; *Keeney* v. *New York*, 222 U. S. 525.)

The title to the property in the deed from the decedent to his sisters came from the decedent's father, but the grantees in the deed from decedent obtained their title thereto through his deed to them and the exercise of the power of appointment given by the will of his father. The power of appointment was a privilege vested in the decedent by a testamentary provision not for his own benefit or advantage but for the benefit and advantage of those within the terms of his father's will whom he might choose as the beneficiaries of the appointment. The constitutional power to impose a tax upon a transfer pursuant to a privilege of appointment is not dependent upon a particular manner of exercising the privilege. The power to impose taxes is one so unlimited in force and so searching in extent that the courts scarcely venture to declare that it is subject to any restrictions whatever except such as rest in the discretion of the authority which exercises it. (Cooley on Statutory Limitations [6th ed.], p. 587.) Taxation should not be excessive nor unnecessarily arbitrary. There are no other limitations upon its exercise except that due process of law must be observed. In *Matter of McPherson* (104 N. Y. 306, 317) this court when considering the constitutionality of the act of 1885 said that " It has never been questioned

that the legislature can impose a tax upon all sales of property, upon all incomes, upon all acquisitions of property, upon all business and upon all transfers."

In *People ex rel. Eisman* v. *Ronner* (185 N. Y. 285, 291) this court when considering the Mortgage Tax Law said: " There is no constitutional guaranty that taxation shall be just and equal; though underlying this great governmental power, and implied from the nature of our political institutions, is the principle that taxation shall be equal, in the sense that it shall not be arbitrary and that there shall be no discrimination against persons, by laying greater burdens upon one than are laid upon others in the same calling or condition."

In *People ex rel. Hatch* v. *Reardon* (184 N. Y. 431, 443) this court when considering the stamp tax said: " All taxation is arbitrary, for it compels the citizen to give up a part of his property; it is generally discriminating, for otherwise everything would be taxed, which has never yet been done, and there would be no exemption on account of education, charity or religion, and frequently it is unreasonable, but that does not make it unconstitutional, even if the result is double taxation."

In *Matter of Keeney* (194 N. Y. 281, 285) this court when considering the transfer tax said: " It is not an inheritance or succession tax, but it is not necessary that it should be such to support the statute imposing it." In the same case on appeal to the United States Supreme Court (*Keeney* v. *New York*, 222 U. S. 525, 533) that court said: " But the plaintiffs insist that there is a radical difference between an inheritance tax and one on transfers *inter vivos*. The first, they say, is an excise, imposed on a privilege; while that complained of here is really on property, though called a tax on a transfer. * * * But if any such distinction could be made between taxing a right and taxing a privilege, it would not avail the plaintiffs in the present case. There is no natural right

to create artificial and technical estates with limitations over, nor has the remainderman any more right to succeed to the possession of property under such deeds than legatees and devisees under a will. The privilege of acquiring property by such an instrument is as much dependent upon the law as that of acquiring property by inheritance, and transfers by deed to take effect at death, have frequently been classed with death duties, legacy and inheritance taxes. Some statutes go further than that of New York, and tax gratuitous acquisitions under marriage settlements, trust conveyances, or other instruments where the transfer of property takes effect upon the death, not merely of the grantor, but of any person whomsoever * * * *. The Fourteenth Amendment does not diminish the taxing power of the State, but only requires that in its exercise the citizen must be afforded an opportunity to be heard on all questions of liability and value, and shall not, by arbitrary and discriminatory provisions, be denied equal protection."

The respondents, the decedent's sisters, acquired their title by the exercise of the power of appointment given to their brother. It was not, however, a sale by John G. Wendel of his property (except so far as it included his life estate). It was not the exercise of a mere property right. We repeat that the exercise of the power of appointment was a privilege. The privilege was voluntarily given and it was voluntarily exercised. The statute is not discriminatory in imposing a tax upon the transfers made by Wendel. The tax is imposed upon every person exercising a similar privilege. The fact that it is the same tax imposed by the exercise of a similar privilege through a testamentary provision shows that it is not arbitrary beyond a degree that taxes are always arbitrary in the means or property by or upon which they are imposed. There is no prohibition against taxing the privilege of exercising a power of appointment.

· We conclude that it was the intention of the legislature to impose a tax upon all transfers by authority of a power of appointment given by deed or will and that a tax upon a transfer by virtue of such a power of appointment is not so arbitrary as to be without reason or to defeat the judgment and direction of the legislature.

The order of the Appellate Division should be reversed and that of the Surrogate's Court affirmed, with costs in both courts.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, HOGAN, CARDOZO and McLAUGHLIN, JJ., concur.

Order reversed, etc.